IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FCCI INSURANCE GROUP,                    *

     Plaintiff,                         *

vs.                                      *
                                      CASE NO: 4:06-CV-107 (CDL)
                                *

RODGERS METAL CRAFT, INC.; RMC
TRUCKING, INC.; ROBERT HARRELL,          *
Individually; and DAVID J. HANKO,
Widower and Executor of the              *
Estate of Camela J. Hanko,
                                *

     Defendants.                        *
_____
                                *

O R D E R

    This case arises from a tragic motor vehicle accident in which

the vehicle driven by Mrs. Camela Hanko was struck by a truck owned

by Defendant Rodgers Metal Craft, Inc., leased by Defendant RMC

Trucking, Inc., and driven by Defendant Robert Harrell.[1] At all times

relevant to this litigation, Plaintiff FCCI Insurance Group insured

Rodgers Metal Craft.  After a dispute in coverage arose, Plaintiff

filed this declaratory judgment action.  Presently pending before the

Court are cross-motions for summary judgment (Docs. 78 & 80);

Plaintiff's Motion to Exclude Expert Testimony (Doc. 93); Plaintiff's

Motion to Strike (Doc. 96); and Defendant Hanko's Motion to Strike

(Doc. 104).  For the following reasons, the Court (1) denies each

---

[1]The vehicle driven by Harrell has been referred to by the parties
as a "tractor," presumably because it operates to pull a trailer.  The
Court refers to the vehicle as the "Truck" in this Order to avoid any
confusion about whether it was authorized to operate on the public
roadways.  It was so authorized.

party's motion for summary judgment; (2) denies each party's motion to strike as moot; and (3) grants in part and denies in part Plaintiff's motion to exclude.

BACKGROUND

The material facts giving rise to the underlying wrongful death action are essentially undisputed. On October 7, 2005, the vehicle driven by Camela Hanko was struck by the Truck driven by Defendant Harrell. (FCCI Ins. Group's Statement of Material Facts as to Which There is no Genuine Issue to be Tried ¶ 2 [hereinafter Pl.'s SMF].) Mrs. Hanko died on June 4, 2006 due to the devastating injuries she suffered in the accident. (*Id.* ¶ 3.) Defendant David Hanko, Mrs. Hanko's widower and the executor of her estate, brought a wrongful death action in the Superior Court of Muscogee County. (*Id.* ¶ 5.)

Rodgers Metal Craft owned the Truck and leased it to RMC Trucking under a Lease-Purchase Agreement. (Ex. C to Compl., Equipment Lease/Purchase Agreement, July 24, 2003.) Rodgers Metal Craft and RMC Trucking are separate legal entities. (Pl.'s SMF ¶ 6.) RMC Trucking insured the Truck under a commercial auto policy issued by Carolina Casualty Company. (*Id.* ¶ 4.) Carolina Casualty tendered one million dollars, an amount representing the available policy limits, to Defendant Hanko in the underlying wrongful death action. (*Id.* ¶ 5; Am. Compl. ¶¶ 25, 26.)

In addition to the coverage provided by the Carolina Casualty policy, Defendants contend that the Truck was covered under insurance policies issued by Plaintiff. Defendants argue that Plaintiff

insured Rodgers Metal Craft under a commercial auto policy (the "Auto Policy") and a commercial umbrella policy (the "Umbrella Policy") that would provide an additional four million dollars in insurance coverage. (Ex. A to Compl., Commercial Auto Policy 8 [hereinafter "Auto Policy"]; Ex. B. to Compl., Commercial Umbrella Policy 5 [hereinafter "Umbrella Policy"].) These Policies were sold to Rodgers Metal Craft in 2004 by J. Smith Lanier & Company, an insurance broker located in Columbus, Georgia. (Def. David J. Hanko's Statement of Material Facts as to Which There is no Genuine Issue to be Tried ¶ 9 [hereinafter Def. Hanko's SMF]; *see also* Rodgers Aff. ¶ 4, Apr. 7, 2008 [hereinafter Rodgers Aff. II].) J. Smith Lanier supplied Rodgers Metal Craft with renewal applications in June 2005 for the policy period covering September 30, 2005 to September 30, 2006. (Def. Hanko's SMF ¶ 13.) Plaintiff continues to insure Rodgers Metal Craft. (Rodgers Aff. ¶ 12, Feb. 12, 2008 [hereinafter Rodgers Aff. I].)

According to Plaintiff, Defendant Rodgers Metal Craft never disclosed to Plaintiff that it owned the Truck or that it was leasing such vehicles to RMC Trucking. Plaintiff further contends that Defendant Rodgers Metal Craft made material misrepresentations regarding its ownership and use of the Truck while applying for insurance with Plaintiff and maintains that had it known that Rodgers Metal Craft owned the Truck and was leasing it to another entity, it would not have issued the policies under which Defendants now seek additional coverage. Plaintiff argues that Defendant Rodgers Metal

Craft's misrepresentations should permit Plaintiff to reform, rescind, or void the Policies.  On September 7, 2006, Plaintiff filed this declaratory judgment action, seeking a declaration of its rights and responsibilities and equitable relief with respect to the Policies in question.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of showing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving] party's case, and on which [the non-moving] party will bear the burden of proof at trial."  *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact.  *Id.* at 324.  A fact is material if it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party.  *Id.*  In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

4

is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In determining if the parties have met their respective burdens, the Court "resolve[s] all reasonable doubts about the facts in favor of the non-movant, and draw[s] all justifiable inferences in his . . . favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and citation omitted). Additionally, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

## DISCUSSION

### I. Motion to Exclude Expert Testimony

To decide the pending motions for summary judgment, the Court must preliminarily address Plaintiff's motion to exclude portions of the expert testimony of M. Thomas Ruke, Jr. Plaintiff contends that Ruke's testimony is neither reliable, relevant, nor helpful. Specifically, Plaintiff asks the Court to strike Ruke's opinions as to: (1) whether the Policies provide coverage in this case; (2) whether Plaintiff should be estopped from asserting a claim of material misrepresentation; and (3) whether Rodgers Metal Craft made material misrepresentations when it applied for insurance. (*See* Pl.'s Br. in Supp. of Mot. to Exclude Expert Testimony 2.) For the following reasons, the Court grants Plaintiff's motion to exclude

these opinions. The Court notes, however, that the testimony encompassing these opinions also contains some evidence admissible under Federal Rule of Evidence 702. Therefore, the Court declines to strike Ruke's testimony in its entirety.

### A. General Principles of Admissibility

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and provides that

> a witness qualified as an expert by knowledge, skill, experience, training, or education may testify . . . in the form of an opinion . . . , if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In applying this rule, the trial court serves as a gatekeeper and may admit expert testimony only where it is both relevant and reliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "District courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). The proponent of the expert bears the burden of showing by a preponderance of the evidence that the proffered expert testimony is admissible. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306

(11th Cir. 1999) ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.").

B.   Analysis of Proposed Expert Testimony

As a preliminary matter, the Court first finds that Ruke's opinion as to whether coverage applies under the Policies in this case is inadmissible.  The Eleventh Circuit has held that "testifying experts may not offer legal conclusions." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005).   The construction of the terms of an insurance policy presents questions of law properly reserved to the Court. *See* O.C.G.A. § 13-2-1.  Accordingly, Ruke's opinions on this subject are inadmissible.

Ruke's testimony also supplies opinions as to (1) whether Plaintiff should be estopped from asserting a claim of material misrepresentation and (2) whether there were material misrepresentations made in this case.   Under Georgia law, these questions are properly reserved to the jury. *See generally Thompson v. Permanent Gen. Assurance Corp.*, 238 Ga. App. 450, 519 S.E.2d 249 (1999).  Furthermore, these opinions are likewise inadmissible under Federal Rule of Evidence 702, which imposes three specific restrictions on the admissibility of such expert opinions: qualification, reliability, and assistance.   Because portions of Ruke's testimony do not meet the requirements of Rule

7

702, the Court grants Plaintiff's motion in part and denies it in part.

### 1. Qualification

First, to qualify to testify as an expert, a witness must possess specialized expertise based on knowledge, skill, experience, training, or education. *See* Fed. R. Evid. 702. Although an expert is not required to have personal knowledge of the facts at issue in the case, *see* Fed. R. Evid. 703, he must be qualified "regarding the matters he intends to address." *Allison*, 184 F.3d at 1309.

Ruke is a thirty-year veteran of the insurance industry. He is currently the owner and manager of an insurance consulting business, and he is licensed to sell property and casualty insurance in the state of Florida. (Ex. A to Ruke Aff., Resumé 1, Feb. 4, 2008.) Since 1984, Ruke has also conducted various insurance education seminars, including an advanced course on insuring trucking risk and basic courses on business auto insurance, umbrella coverage, and essentials of legal liability. (*Id.* at 1-4.) The parties agree that the Policies are standard form policies used throughout the country. (Def. Hanko's SMF ¶ 10; Pl.'s Resp. to Def.'s Statement of Material Facts to Which There is no Genuine Issue to be Tried ¶ 10 [hereinafter Pl.'s Resp. SMF].) Based on his experience in the insurance industry, the Court finds that Ruke is qualified to describe standard commercial auto policy terms, such as those involved in this case.

### 2. Reliability

8

Second, "the methodology by which the expert reaches his conclusion [must be] sufficiently reliable . . . ." *Allison*, 184 F.3d at 1309. The proffered testimony must be "supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 590). Courts use a non-exclusive list of factors to assist in determining whether an expert's opinion is reliable: "(1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." *Allison*, 184 F.3d at 1312 (citing *Daubert*, 509 U.S. at 593-94).

Plaintiff argues that Ruke's opinions are not reliable because he failed to establish a proper basis for supporting them. When an expert relies "solely or primarily on his experience," the proponent of the evidence has the burden "to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Frazier*, 387 F.3d at 1265. In this case, Ruke's experience alone is sufficient to explain the basis for his generalized description of standard insurance policy terms. *See, e.g., United States v. Douglas*, 489 F.3d 1117, 1125 (11th Cir. 2007) (per curiam) (affirming district court's decision to admit expert

testimony when expert "testified to his extensive experience and training"). However, the Court finds that any testimony beyond a description of standard commercial liability insurance terms would not assist the trier of fact, and thus the Court need not specifically decide whether Ruke's "unhelpful" opinions are otherwise reliable.

### 3. Assistance

Proffered expert testimony must also be relevant to the issues at hand and assist the trier of fact in resolving those issues. *See Frazier*, 387 F.3d at 1262. If the testimony addresses issues within the understanding and experience of an average citizen, it is not considered helpful to the jury and is properly excluded under Rule 702. *Id.* at 1262-63. Put differently, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.*

The Court agrees with Plaintiff that Ruke's ultimate conclusions will not assist the trier of fact. Defendant argues that Ruke's affidavit "sets forth in detail the facts on which his opinions are based, and the experience and knowledge of the industry which permits him to interpret such facts in the manner he does." (Def. David J. Hanko's Br. in Opp'n to Mot. to Exclude Expert Testimony 7.) However, this rationale is insufficient to explain why, once Ruke has described the facts underlying his opinion, his testimony is thereafter necessary to help the trier of fact determine that a

material misrepresentation was made or that estoppel or waiver should

apply.  Ruke's experience and knowledge of the industry are certainly

helpful in providing background knowledge of the "any auto"

designation and similar insurance terms.   Once this background is

established, however, Ruke's "opinions" are "nothing more than what

lawyers for the parties can argue in closing arguments." *Frazier*,

387 F.3d at 1262-63.

In sum, the Court finds that the portions of Ruke's testimony

that simply define and explain the policy provisions at issue in this

case may be admissible under Rule 702.[2]   However, Ruke's opinions as

to (1) whether coverage applies under the Policies in this case; (2)

whether Plaintiff should be estopped from asserting a claim of

material misrepresentation; and (3) whether Rodgers Metal Craft made

material misrepresentations are inadmissible, and therefore the Court

has not considered such opinions in ruling on the pending motions.[3]

---

[2]Plaintiff does not appear to dispute Ruke's general description of the Policies' terms; instead, Plaintiff argues that "any auto" coverage should not apply when the insured has made a material misrepresentation in its application for coverage. (*See, e.g.,* Def. Hanko's SMF ¶¶ 3, 7, 8; Pl.'s Resp. SMF ¶¶ 3, 7, 8.)   The Court hastens to add that Ruke's testimony would be constrained by the actual terms of the Policies.   In other words, Ruke would not be permitted to testify to matters that are inconsistent with the actual Policies in this case.

[3]In addition, Plaintiff and Defendant each filed a motion to strike an affidavit produced by the opposing party.   These motions to strike are not based on Federal Rule of Evidence 702; rather, each party contends that the opposing party's affidavit violates Federal Rule of Civil Procedure 56(e).   Rule 56(e) requires a supporting or opposing affidavit to (1) be made on personal knowledge; (2) set forth facts that would be otherwise admissible as evidence; and (3) demonstrate that the affiant is competent to testify on the subject matter of the affidavit.   Each party argues that the opposing party's affidavit does not comply with these requirements because it is either (1) based solely on hearsay; (2) speculative and/or conclusory; or (3) not made on personal knowledge.

## II.  Motions for Summary Judgment

The issues presented by the parties' motions for summary judgment are: (1) whether the Policies cover the Truck; and (2) if so, whether the alleged misrepresentations made by Rodgers Metal Craft otherwise void coverage in this case.  The parties appear to agree that Georgia law applies in this case.[4]  In Georgia, construction of an insurance contract is a question of law for the Court, O.C.G.A. § 13-2-1, and "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy,"

---

Because the Court did not rely on any inadmissible evidence in ruling on any of the other pending motions in this case, the motions to strike (Docs. 96 & 104) are denied as moot.

[4]Generally, "[a] federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). In a diversity case involving the interpretation of an insurance contract, "the Court is bound by the applicable state law governing the contract, in this case Georgia law." *Giddens v. Equitable Life Assurance Soc'y of U.S.*, 445 F.3d 1286, 1297 n.9 (11th Cir. 2006).  Georgia has adopted the general rule that where a contract contains no choice of law or jurisdiction provision, the location where the contract was executed determines the applicable law under the principle of *lex loci contractus*. *Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95, 311 S.E.2d 460, 461 (1984). Where the contract contemplates execution in another jurisdiction, however, that state's law will apply.  *Id*.  To determine where the contract was executed, a "court must determine where the last act essential to the completion of the contract was done." *Id*.  "With regard to insurance contracts, Georgia law provides that the last act essential to the completion of the contract is delivery; consequently, insurance contracts are considered made at the place where the contract is delivered." *Johnson v. Occidental Fire & Cas. Co. of N.C.*, 954 F.2d 1581, 1584 (11th Cir. 1992).  In this case, there is no evidence that the Policies were delivered in any state other than Georgia; thus, the Court will apply Georgia law. (*See, e.g.*, Def. Hanko's Statement of Facts ¶¶ 9, 13.)

O.C.G.A. § 33-24-16. In interpreting the terms and conditions of a policy, the Court must adhere to "the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning." *Collier v. State Farm Mut. Auto. Ins. Co.*, 249 Ga. App. 865, 866, 549 S.E.2d 810, 811 (2001) (internal quotation marks and citations omitted).

After applying these principles, the Court concludes that as a matter of law, the Auto Policy's "any auto" provision covers the Truck, and the Umbrella Policy also may provide coverage. However, genuine issues of material fact exist as to whether Rodgers Metal Craft made a material misrepresentation that would allow Plaintiff to void the Policy under Georgia law. Accordingly, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted to the extent that the Truck is covered under Plaintiff's policies but denied as to whether coverage can be voided due to RMC's alleged misrepresentations.

A. <u>Coverage under the Policies</u>

1. *The Auto Policy*

Defendants argue that the plain terms of the Auto Policy provide coverage in this case. More specifically, Defendants contend that the Truck is "any auto," Rodgers Metal Craft is an "insured," and the Auto Policy therefore provides up to one million dollars in liability insurance coverage. (*See* Auto Policy at 8, 22.)

The Auto Policy provides liability coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or

13

'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Auto Policy at 15.) An "insured" is defined, in relevant part, as "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." (*Id.*) An 'auto' is defined, in relevant part, as "a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." (*Id.* at 22.)

The parties do not appear to dispute that the collision in this case was an "accident" resulting from the use of an "auto"; nor does Plaintiff argue that any of the Auto Policy's exclusions apply to bar coverage. Moreover, it is undisputed that at the time of the accident, the Truck was owned by and titled in the name of Rodgers Metal Craft, and the lease/purchase agreement between Rodgers Metal Craft and RMC Trucking granted RMC Trucking permission to operate the Truck. (Def. Hanko's Statement of Facts ¶¶ 4, 25; Pl.'s Resp. to Def. Hanko's Statement of Facts ¶¶ 4, 25 (controverting only that part of Defendant's statement regarding the corporate relationship between RMC Trucking and Rodgers Metal Craft); *see generally* Ex. C to Compl.) The primary dispute in this case is whether the Truck is "covered" within the meaning of the Auto Policy terms. (*See* Auto Policy at 15.)

The Auto Policy declarations page establishes that the Auto Policy provides liability coverage for "any auto." (Auto Policy at 8, 14.) The word "any" is not specifically defined by the Auto Policy. Garth Crow, Plaintiff's Vice-President of the Southeast

Region, deposed that the "any auto" designation means that any auto *owned by the insured* is covered for liability purposes.[5] (Crow Dep. 23:7-23, Feb. 21, 2007; *see also* Def. Hanko's Statement of Facts ¶ 7; Pl.'s Resp. to Def. Hanko's Statement of Facts ¶ 7.) Thus, for purposes of liability coverage, the terms of the Auto Policy clearly contemplate coverage for the Truck, an "auto" owned by Rodgers Metal Craft. Because the Truck is therefore a "covered auto" and Rodgers Metal Craft is a proper "insured," the terms of the Auto Policy provide coverage up to the applicable policy limits in this case.

### 2. *The Umbrella Policy*

Defendants next contend that the Umbrella Policy provides additional insurance coverage. The Umbrella Policy requires Plaintiff to "pay on behalf of the insured those sums in excess of the **Self Insured Retention** that the insured becomes legally obligated to pay as damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** to which this insurance applies."[6] (Umbrella Policy at 9.) The Umbrella Policy requires Plaintiff "to defend the insured against any claim or **Suit** seeking damages to which this insurance applies when" either those "damages are not covered by

---

[5]This interpretation is consistent with the "ordinary and customary" meaning of the word "any." *See Tabb v. State*, 250 Ga. 317, 318, 297 S.E.2d 227, 230 (1982) (quoting Webster's Seventh New Collegiate Dictionary definition of "any" as "'(1) One or some indiscriminately of whatever kind; (2) One, some or all indiscriminately of whatever quantity; (3) Unmeasured or unlimited in amount, number, or extent.'").

[6]The Umbrella Policy ascribes specific meanings to all terms printed in bold face in the policy.

**Underlying Insurance**" or "[t]he applicable limits of liability of the **Underlying Insurance** have been exhausted by payment of judgments or settlements." (*Id.* at 9-10.) For purposes of "liability arising out of the ownership, maintenance, [or] use . . . of any **Automobile**," the Umbrella Policy defines an "insured" as any person using, with permission, an automobile registered in the insured's name under any motor vehicle registration law. (*Id.* at 22, 16-17.)

Plaintiff acknowledges that Rodgers Metal Craft's liability in this case arose from the use of an automobile that was titled in the name of Rodgers Metal Craft. (Pl.'s SMF ¶ 15.) Plaintiff also admits that the equipment lease/purchase agreement gave RMC Trucking permission to operate the Truck. (*See* Def. Hanko's SMF ¶ 4; Pl.'s Resp. SMF ¶ 4.) Moreover, Plaintiff does not contend that any of the Umbrella Policy's exclusions apply to bar coverage. Accordingly, the Court finds that the plain terms of the Umbrella Policy may provide coverage if the underlying Auto Policy does not apply or if the Auto Policy's coverage limits are exhausted.

B.   Rescission of the Policies under O.C.G.A. § 33-24-7

The crux of Plaintiff's argument is that even if the Truck is covered under the language of the Auto Policy and Umbrella Policy, the Policies should be rescinded because Rodgers Metal Craft materially misrepresented the nature of the insurable risk when it applied for insurance. O.C.G.A. § 33-24-7 authorizes rescission of an insurance policy issued on the basis of fraudulent or material

16

"[m]isrepresentations, omissions, concealment of facts, or incorrect statements."  In relevant part, that code section provides:

> (b) Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under [an insurance] policy or contract unless:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

O.C.G.A. § 33-24-7(b).  In order to void an insurance policy under this provision, the insurer has the burden to show (1) the existence of a misrepresentation, omission, concealment of facts, or incorrect fact made by or on behalf of an insured and (2) the materiality of such facts, omissions, or misrepresentation.  *See* O.C.G.A. §§ 33-24-7(a) & (b); *see also Oakes v. Blue Cross/Blue Shield*, 170 Ga. App. 335, 336, 317 S.E.2d 315, 316 (1984).

Defendants contend that even if Rodgers Metal Craft made fraudulent misrepresentations in its insurance application, Georgia law does not permit Plaintiff to retrospectively void coverage for the liability insurance at issue in this case.  *See Liberty Ins. Corp. v. Ferguson*, 263 Ga. App. 714, 716, 589 S.E.2d 290, 291 (2003).  While Georgia law prohibits an insurer from retrospectively voiding compulsory motor vehicle liability coverage, the Court finds that

this general principle does not apply to the unique circumstances of this case.

First, the central holding of *Ferguson,* which is relied upon by Defendants, has no application in this case. *Ferguson* held that the insurer could not rely upon O.C.G.A. § 33-24-7 to retrospectively void the policy because the policy had to be cancelled pursuant to the procedure set out in O.C.G.A. § 33-24-45. *Ferguson*, 263 Ga. App. at 716, 589 S.E.2d at 291-92. Because O.C.G.A. § 33-24-7 simply does not apply to policies covered by O.C.G.A. § 33-24-45, *see Sentry Indem. Co. v. Sharif*, 248 Ga. 395, 396, 282 S.E.2d 907, 908 (1981), the court of appeals determined that it was irrelevant whether the insured made material misrepresentations when applying for the policy, *Ferguson*, 263 Ga. App. at 716, 589 S.E.2d at 291-92. In contrast to the policies in *Ferguson*, the Policies in this case are not subject to the cancellation requirements set out in O.C.G.A. § 33-24-45.[7] O.C.G.A. § 33-24-45(b)(1) defines "policy" in relevant part as "a policy insuring a natural person as named insured." The Policies do not list a natural person as the named insured. (*See* Auto Policy at 8; Umbrella Policy at 5.) Furthermore, O.C.G.A. § 33-

_____

[7]Contrary to Defendants' contentions, the Court finds that O.C.G.A. § 33-24-44 is likewise inapplicable. Although O.C.G.A. § 33-24-44 sets forth a generalized cancellation procedure for insurance policies, it applies only "[e]xcept as otherwise provided in this chapter[.]" O.C.G.A. § 33-24-44(a). O.C.G.A. § 33-24-7 "otherwise provide[s]" a method for voiding a policy. *See Hall v. Time Ins. Co.*, 854 F.2d 440, 441 (11th Cir. 1988) (per curiam) (finding O.C.G.A. § 32-24-44 to be "irrelevant" in a case where "the insurance company relie[s] upon [a] misrepresentation to void the contract from its inception").

24-45 does not apply to a motor vehicle that is used in the insured's business or "any policy insuring an automobile which is one of more than four insured under a single policy." O.C.G.A. § 33-24-45(b)(1)(B). It is thus clear that, unlike *Ferguson*, the Policies do not have to be cancelled pursuant to O.C.G.A. § 33-24-45.

The foregoing distinction, however, does not end the Court's inquiry because the liability insurance provided by the Policies may have been issued pursuant to Georgia's compulsory insurance scheme; thus, the retrospective cancellation of the Policies potentially implicates another public policy underlying *Ferguson*—reasonably assuring that minimum liability insurance exists for the benefit of innocent persons injured on Georgia's roadways. O.C.G.A. § 33-34-4 provides that "[n]o owner of a motor vehicle required to be registered in this state or any other person . . . shall operate or authorize any other person to operate the motor vehicle unless the owner has motor vehicle liability insurance" in a statutorily-prescribed amount. By enacting this statute, "the [Georgia] Legislature established the public policy that innocent persons who are injured in accidents involving motor vehicles should be able to recover at least" the statutory minimum in damages. *See, e.g., Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 614, 440 S.E.2d 242, 243 (1994). Therefore, a persuasive argument exists that when the cancellation of the policy results in the absence of compulsory liability coverage, such cancellation is contrary to Georgia's public

19

policy regarding minimum compulsory liability insurance coverage. *See, e.g., Sharif*, 248 Ga. at 396, 282 S.E.2d at 908 ("[I]t is impossible to reconcile the existence of a right to rescind the insurance contract ab initio for fraud with the general scheme of the compulsory insurance law," and thus an insurer may not "retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party." (internal quotation marks and citation omitted)).

Even in cases involving compulsory insurance, however, Georgia courts have found it necessary to balance this public policy against the interests of the insurer. To this end, courts have held that an insurer may avoid liability insurance in excess of the statutory limits when an amount equivalent to the statutory minimum is available to compensate the injured party. *See, e.g., Ross v. Stephens,* 269 Ga. 266, 269, 496 S.E.2d 705, 708 (1998) (holding that where vehicle otherwise would not be insured because not listed on declarations page, liability coverage would be deemed to exist but only to extent of required minimum limits); *Woody v. Ga. Farm Bureau Mut. Ins. Co.*, 250 Ga. App. 454, 455, 551 S.E.2d 835, 837 (2001) (finding that when enforcement of an otherwise valid policy exclusion would leave injured third party without insurance funds to satisfy judgment, the insurer remains liable for the minimum statutory limits); *Jackson*, 211 Ga. App. at 614, 440 S.E.2d at 244 (observing that a policy "exclusion may be enforced as written where the injured

third party had access to other insurance funds through uninsured motorist coverage under another policy"). Such decisions ensure that the legislative intent behind the compulsory insurance scheme is fulfilled while also recognizing that "the compulsory insurance law does not establish public policy as to sums greater than those required by such law." *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 342, 329 S.E.2d 136, 142 (1985).

Based on the foregoing, the Court finds that the public policy underlying the compulsory insurance statute is vindicated by the availability of liability insurance in an amount at least equivalent to the statutory minimums. Accordingly, the Court finds that an insurer, based upon an insured's material misrepresentation in the insurance application, may retrospectively void a commercial insurance policy that includes motor vehicle liability coverage as long as the cancellation of the policy does not leave an injured third party without available liability insurance in an amount equal to the minimum statutory requirements. In this case, it is undisputed that, at a minimum, the injured party has access to the Carolina Casualty policy, which clearly provides liability insurance in excess of the statutory requirements. Under these circumstances, no legitimate reason exists under Georgia law to prevent Plaintiff from seeking to cancel the Policies in question pursuant to O.C.G.A. § 33-24-7.

Plaintiff argues that the present record establishes as a matter of law that Defendant Rodgers Metal Craft made material misrepresentations in its insurance application that authorize the voiding of Plaintiff's policy.  The Court must examine the record to determine whether genuine issues of material fact exist to be tried regarding the existence of the elements of O.C.G.A. § 33-24-7 for voiding the policy.

1.   *Existence of the Misrepresentation*

Plaintiff contends that it is entitled to rescind the Policies under Georgia law because Rodgers Metal Craft misrepresented the nature of the insurable risk by failing to inform Plaintiff that it owned the Truck and/or leased vehicles to other entities.   To prevail, Plaintiff must first demonstrate the existence of objectively false information.   "[T]he Supreme Court of Georgia has specifically eschewed any need for the insurer to show that the plaintiff was aware of the falsity of the representation or statement in order to void a policy under subsections (2) or (3) [of O.C.G.A. § 33-24-7]." *White v. Am. Family Life Assurance Co.*, 284 Ga. App. 58, 61, 643 S.E.2d 298, 300 (2007); *accord United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 237, 248 S.E.2d 635, 637 (1978) (expressly overruling cases "which require actual knowledge of the falsity of misrepresentations in order to prevent a recovery on the policy").   Even though the subjective intent of the parties is not at issue in this case, genuine issues of material fact exist as to

whether Rodgers Metal Craft made any objectively false misrepresentation or concealed facts when it applied for the Policies.

Plaintiff claims that Curtis Rodgers and/or Cindy Durga provided J. Smith Lanier with objectively false information regarding whether Rodgers Metal Craft leased vehicles to other entities. Specifically, Plaintiff points to the insurance applications which show a negative response to the question, "Do you lease vehicles to others?" and contends that Rodgers and/or Durga supplied J. Smith Lanier with that response. (Crow Dep. at 52:10-15.) In addition, Plaintiff contends that Rodgers and/or Durga failed to disclose ownership of the Truck. (*See* Culpepper Aff. ¶ 6, Mar. 20, 2008; Rodgers Aff. II ¶ 4.)

The record, however, reveals the existence of genuine issues of material fact regarding the application process. Rodgers, the President of RMC Trucking and Rodgers Metal Craft, avers that "[p]rior to the wreck from which this litigation arose, I was never asked by anyone from J. Smith Lanier or [Plaintiff] about vehicles that Rodgers Metal Craft leased to or from anyone." (Rodgers Aff. II ¶ 2.) Likewise, Durga, the Secretary/Treasurer of Rodgers Metal Craft, averred that she "was never asked by anyone from J. Smith Lanier, or [Plaintiff], about vehicles that Rodgers Metal Craft leased to or from anyone prior to the wreck from which this litigation arose." (Durga Aff. ¶ 4, Apr. 7, 2008.) Durga also contends that she supplied J. Smith Lanier's agent with a list of

vehicles owned by Rodgers Metal Craft which included the Truck. (*Id.* ¶¶ 6, 7.)

It is thus apparent that, at a minimum, a factual dispute exists as to whether Plaintiff or its agent ever inquired as to whether Rodgers Metal Craft owned or leased vehicles such as the Truck. Georgia courts have held that such circumstances present a jury question. *See, e.g., Browning v. Davis*, 167 Ga. App. 393, 394, 306 S.E.2d 40, 42 (1983) (finding a jury question existed in a case where "the applicant stated that the critical question was not asked and the agent said the question was asked but the answer given by the applicant was false").

### 2.   Materiality of the Misrepresentation

Defendants next argue that even if Rodgers Metal Craft made a misrepresentation, any such misrepresentation was not material. Plaintiff counters with evidence indicating that it would not have insured Rodgers Metal Craft had it known the company owned the Truck.

To void a policy, "the burden rests on the insurer to show that the misrepresentation was material to its acceptance of the terms of the policy." *Thompson*, 238 Ga. App. at 451, 519 S.E.2d at 250.  A representation is "material" if it "would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance." *Oakes*, 170 Ga. App. at 336, 317 S.E.2d at 316. (internal quotation marks and citation omitted).   "Whether misrepresentations are material is

24

ordinarily a question for the jury; but where . . . the evidence excludes every reasonable inference except that they were material, no issue is presented upon that point for determination by the jury." *Id.* (omission in original) (internal quotation marks and citation omitted). Georgia law provides that "the uncontradicted affidavit of the insurer that it would not have issued the policy in question had it known the truth regarding the insured's condition precludes any genuine issue of fact with respect to whether the insurer in good faith would not have issued the policy." *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga. App. 430, 432-33, 469 S.E.2d 199, 202 (1995).

In this case, the record contains evidence suggesting that Plaintiff would not have issued the Policies as written had it known that Rodgers Metal Craft owned the Truck. Alison Hacken, one of the underwriters who worked with the Policies, testified that, at a minimum, she would have asked for more information regarding the leased vehicles before issuing the Policies as written. (Hacken Dep. 44:23-45:12, Feb, 21, 2007.) Hacken also testified that Plaintiff did not generally underwrite trucking and would not have done so in this case, stating "if we know there is [a] leased vehicle . . . we ask what vehicle, what are they using it for. In this case, it was still a trucking operation. We still would not have written [the Truck]." (Hacken Dep. at 58:2-11; *see also* Crow Dep. at 33:1-2 (indicating that Plaintiff insured "little or no trucking").)

This evidence, however, is not uncontroverted. For example, Karlene Klimek, another underwriter who worked with the Policies, testified that she "believe[d]" she would have issued the renewal Policies as written even knowing that Rodgers Metal Craft owned the Truck. (Klimek Dep. 20:22-22:17, Oct. 18, 2007.) In addition, Klimek's testimony indicates that Plaintiff did not have strict underwriting guidelines that would have prohibited insuring the Truck. (*See, e.g., id.* at 39:20-40:13 (acknowledging that Plaintiff may write local trucking).) In light of this conflicting evidence and Georgia's policy of reserving the issue of materiality to the jury, the Court finds that summary judgment regarding the materiality of any misrepresentation is inappropriate in this case.

C.  Estoppel or Waiver

Finally, Defendants contend that at the time Plaintiff learned of the alleged misrepresentations, Plaintiff continued to insure Rodgers Metal Craft under the Policies. Defendants argue that this continued acceptance of premiums essentially waives Plaintiff's material misrepresentation defense. Under Georgia law, "[a]fter learning of a misrepresentation in the application, an insurer waives the defense that the misrepresentation voided the policy if it treats the policy as valid and binding and retains the insured's premiums as earned." *Thompson*, 238 Ga. App. at 451, 519 S.E.2d at 251 (finding that genuine issues of material fact existed with respect to waiver when record indicated that the insurer renewed the policy after

26

learning of the alleged material omission without returning initial premiums).[8]

In support of their waiver or estoppel argument, Defendants point to evidence that the Policies were renewed in September of 2006, after the accident giving rise to this litigation. (*See* Klimek Dep. at 50:9-13.) The Policies were also renewed in June of 2005. (Def. Hanko's SMF ¶¶ 13, 14; Pl.'s Resp. SMF ¶¶ 13, 14.) In addition, Klimek testified that she "believe[s]" Plaintiff currently has full knowledge of the fact that Rodgers Metal Craft leases vehicles to RMC Trucking, and yet it continues to insure the company. (*See* Klimek Dep. at 51:10-18.) Defendants argue that since "one can hardly renew something that is dead, [Plaintiff]'s renewing the policy is one indication that the policy was not void." *Thompson*, 238 Ga. App. at 451, 519 S.E.2d at 251.

The Court concludes that genuine issues of fact exist as to whether waiver or estoppel applies in this case. "The purpose behind the application of the principles of waiver or estoppel against an insurance company is to prevent the insurer from accepting payment for coverage which it knows it will deny." *Chicago Ins. Co. v. Cent. Mut. Ins. Co.*, 229 Ga. App. 291, 296, 494 S.E.2d 1, 5 (1997). With respect to Defendants' contention that the 2006 Policy renewal should

---

[8]The *Thompson* court also noted that the same evidence that gave rise to the possibility of waiver also indicated that any alleged misrepresentation may have been immaterial. *Thompson*, 238 Ga. App. at 451, 519 S.E.2d at 251.

estop Plaintiff from denying coverage, Plaintiff tendered a full refund of premiums in its original Complaint, filed September 7, 2006.[9]  A refund of premiums is one indication that Plaintiff never intended to provide the disputed insurance coverage.  *Cf. Thompson*, 238 Ga. App. at 451, 519 S.E.2d at 251 (finding that waiver may have occurred because there was no indication that the initial premiums had been returned).  With respect to the 2005 renewal, Plaintiff produced evidence that the 2005 renewal applications contained the same alleged misrepresentations as the 2004 applications.  Thus, Plaintiff argues that it still did not have notice that Rodgers Metal Craft owned or leased the Truck when it renewed coverage.  This, too, is evidence that Plaintiff did not intend to "accept[] payment for coverage which it knows it will deny."  *Chicago Ins. Co.*, 229 Ga. App. at 296, 494 S.E.2d at 5.  Because genuine issues of material fact exist as to whether waiver or estoppel should apply, summary judgment is inappropriate on that basis.[10]

---

[9]The record also shows that Rodgers Metal Craft sold its leased vehicles in October of 2006, shortly after this lawsuit disputing coverage was filed.  (Rodgers Aff. I ¶ 12.)  Defendants argue, however, that the fact that Plaintiff accepted premiums from the time of the accident until the time the Truck was sold is sufficient for the Court to find waiver or estoppel as a matter of law.  The Court disagrees.  While the acceptance of premiums may be some evidence that Plaintiff waived its misrepresentation defense, the existence of fact questions requires a jury to resolve the issue.  *See, e.g., Thompson*, 238 Ga. App. at 451, 519 S.E.2d at 251.

[10]Plaintiff also argues that the Court should reform the Policies to express the parties' intent, that is, to exclude coverage for the Truck.  "Reformation of a contract is an equitable remedy for correcting an instrument to make it express the true intention of the parties, where from some cause, such as fraud, accident, or mistake, it does not express such intention."  *Lee v. Am. Central Ins. Co.*, 241 Ga. App. 650, 652, 530

CONCLUSION

For the reasons stated herein, the Court finds that the plain terms of the Auto Policy and the Umbrella Policy provide coverage for the Truck. However, the Court also finds that genuine issues of material fact exist to be tried as to whether alleged misrepresentations in the application void coverage in this case and whether Plaintiff has waived, or should be estopped from asserting, any such argument for the absence of coverage based upon these alleged misrepresentations. Accordingly, the Court denies FCCI Insurance Group's Motion for Summary Judgment (Doc. 80) and the Motion for Summary Judgment of Defendant David J. Hanko (Doc. 78). In addition, the Court grants in part and denies in part Plaintiff's Motion to Exclude Expert Testimony (Doc. 93). The Court denies as moot Plaintiff's Motion to Strike Portions of the Affidavit of H. Curtis Rodgers (Doc. 96) and Defendant David J. Hanko's Motion to Strike the Affidavit of Robert Culpepper (Doc. 104).

---

S.E.2d 727, 730 (1999). "The remedy is not available for the purpose of making a new and different contract for the parties, but is confined to establishment of the actual agreement." *Id.* (internal quotation marks and citation omitted). As evidenced by the foregoing discussion, Plaintiff maintains that it never intended to provide coverage for the truck while Rodgers Metal Craft believed the truck was insured. Because genuine issues of material fact exist to be tried regarding this dispute, the Court declines to equitably reform the Policies as a matter of law at this time.

IT IS SO ORDERED, this 28th day of July, 2008.


                                    S/Clay D. Land
                                  CLAY D. LAND
                          UNITED STATES DISTRICT JUDGE